Good morning, Justices. I know Mr. Chemeris is out there. We're talking again. Good afternoon. I know Mr. Chemeris is out there. May I get him? Well, it's past the time that the case has set, so he'd better get in here fast. Thank you. Are you Counselor? Your case has already been called, Counselor. You're late. Please state, as I said at the beginning, when your case is called, please state your name, who you represent. This is a recording device. It's not an amplifier, so keep your voice up. You will each have 20 minutes. I would advise the appellant to reserve five minutes for rebuttal. Remember that we've read your materials very carefully, so I advise you to get to your strongest argument or most important argument first. We're not stopping you. We're strict clock watchers, but when your time's up, I will ask you to wrap up. Please proceed whenever you're ready, Counselor. Thank you, Your Honor. My name is Michael D. Cannuli. I'm the appellant in this case. Justice Harris, Justice Cunningham, Justice Connors, thank you for the opportunity to appear before the Court this afternoon. To a certain extent, I'm here not only on my own behalf, but I'm also here on behalf of other sole practitioners and maybe other small firm lawyers that might have had problems with coverage in the past. As you know, this has been an eight-year bit of litigation going back to 2012, and again, thank you for the opportunity. I know that you've read the briefs. I know that the appellate court is inherently familiar with the law on professional liability insurance coverage. I'll try not to speak too much to that, but more to the particular facts of the case. So, Mr. Cannuli, is this a malpractice action or a fee dispute? What is it? It's a legal malpractice action, Your Honor. Okay. In answer to your question, a fee dispute in a divorce case is begun by the filing of a fee petition by the attorney, and the divorce judge is tasked with the job of determining a reasonable fee. What fees were incurred, when they were incurred, whether the fees were reasonable and necessary, whether the hourly rate was usual and customary. This is a legal malpractice action because it's a separately filed case. It's a case where there are allegations of professional negligence, which appeared in the amended complaint. There are allegations of professional negligence of what I did. What specifically did your client allege in her amended complaint that gave rise to this appeal? Of course, Judge. So, if you were to look at, it would be paragraph 21. I would just like you to recite it for me. Yes. Summarize it. There was an alleged failure to review discovery before instituting actions for injective relief. There was an alleged allegation of professional negligence for failure to analyze and review corporate records. There was an alleged claim of professional negligence for filing a third-party complaint for joining Prairie State Oil as a necessary party in the case. And there are allegations of negligence in obtaining the TRO and also with respect to the appeal that followed. A petition for attorney's fees in a divorce case contains none of those allegations. In this case, there was a jury that was requested by Ms. Frieda. In a petition for fees, there is no jury. In a petition for fees, the attorney is not subjected to a claim. In other words, the client or former client cannot recover damages from the attorney for the work that they did in the divorce case. And in a legal malpractice claim, there is a claim for damages for professional negligence. So, there actually was an attorney fee petition, which I filed. There was a hearing by the court. The court determined that my fees were reasonably and necessarily incurred. I think what's important is that Ms. Frieda, through her attorney, filed a motion to consolidate the legal malpractice claim into the divorce case. And ISBA objected to that. In objecting to the motion to consolidate, ISBA said that the legal malpractice case was different and distinct from the fee petition proceedings in front of the divorce judge. And it's curious that they objected to the consolidation, saying they were distinct and different. But then, after having defended me for a year, they changed their position on coverage. Not because of any discovery that was obtained. Not because of anything I did. Not because of any conduct. It was simply because Ms. Frieda filed an amended complaint. ISBA has never disputed that the original complaint, which contained the allegations I presented to the court, was a covered claim. I tendered it. They accepted it. I paid a $5,000 retainer. I entrusted the defense of the case to ISBA. And we did that for a year. When the original complaint alleging these things was dismissed for insufficiency, they filed an amended complaint. And they replied verbatim. The original complaint, S-Count 1. They filed a second, Count 2, for breach of contract. It alleged the same acts of negligence. So it wasn't a new claim or a different claim. It was simply an alternative claim seeking money damages for breach of contract. The thing that I take umbrage with greatly in this case is that ISBA, while they were defending me, and while I entrusted the defense to them, filed a 619 motion to dismiss the amended complaint. And what they said to Judge Muller in the Lake County, presiding over the legal malpractice case, is that Ms. Frida should not be allowed to continue on with this litigation because it's a fee dispute. And the judge in the divorce case already decided the fees. Shortly after they filed that motion, they then changed their position on coverage and said it's a fee dispute. And they abandoned the defense of the case. So when this case was in front of Judge Flynn, who worked extremely hard on this case, he was very conscientious, Judge Flynn said on several occasions, a plaintiff cannot plead an insurer into coverage. So if you have an intentionally wrongful act where you run somebody over, you can't file a complaint saying it was negligence or somebody shoots somebody in the back of the head. But he also said you can't plead somebody out of coverage. And my point is that by filing the amended complaint, absolutely nothing changed with regard to my coverage because the original complaint was included in the amended complaint. What's the status of your counter plan in the trial court? The court, I don't know that the court ever ruled on the counter plan. So it's just there, it's pending? Yes, Your Honor. And what I would ask this court at the end of the day is to look at the circumstances of this case, to reverse the grant of summary judgment for ISBA mutual and instead enter summary judgment for me finding that, in fact, there was a duty to defend. Counsel, let me ask you. The complaints are so important to me. I'm looking at this case. The complaints, the first complaint and the amended complaint. In the first complaint, allegations are made. You tender the defense. They represent you, correct? Yes, Your Honor. When the second complaint comes in or the amended complaint comes in, the only real difference is in the wherefore. Is it not? As far as what the request for damages are? Yes. The allegations of the facts have not changed. They used two words that apparently troubled Judge Flynn. They used the words, in that. And because they used the words, in that, Judge Flynn took that to mean that they were only seeking fees. I don't think that's conclusive by any stretch of the name. Was there any discovery to ask the scrivener of this or the client as to what those words meant to them? No. And I've always said that mutual in this case abandoned the claim prematurely because what options were available to them? They could have, when the amended complaint was filed, defended it under a reservation of rights. They didn't. They could have taken discovery on Ms. Frida. They could have deposed her, sent her interrogatories, asked her to produce documents. There is absolutely nothing in this record where mutual abandoned the case to support the allegation that Frida was only seeking fees. More importantly, that Frida could not recover any damages other than fees. And when you look at this complaint, there was nothing stopping Frida from presenting her claim of damages in any way she wanted. Now, I'm not a coverage attorney, but my understanding is that if an insurance company raises an exclusion, it has to be plainly worded, it has to be clearly stated, and it has to leave no doubt about the exclusion. I would like the appellate court to consider a case that came out recently, and I did reach out to Mr. Chemers and let him know I was going to ask the appellate court to consider it. It's a case called State Found Mutual v. Elmore, E-L-M-O-R-E. Did you file a motion with that information? I did not because I just found it the day before yesterday. I most assuredly could, but I thought it was too short, quite frankly. Thanks for that consideration, but, I mean, I'll grant you leave to file something in writing. Thank you, if I may do that, Judge. You may. In that case, there was some adjustment for State Farm. In the trial court, the appellate court reversed it. They said that the definition was vague and it was overly broad. I've read the language of this policy 30 times, and the policy says that it doesn't cover legal fees, costs, or expenses, which are in whole or in part a consequence of those fees. It doesn't define legal fees. I can't tell you what these words mean. In whole or in part a consequence of the fees. I got sued because of the work, allegedly, I did or didn't do. I was sued because of the consequences of the work I did. The fees themselves were a product of the work. There's a case called Kaplan, Continental Casualty v. Kaplan. I've always thought it was directly on point. I've always thought it was dispositive because when I went back to the Continental case, the coverage language was identical to what the mutual policy is. It's almost word for word. What the court said in Kaplan was that you can have legal fee damages that present a covered claim, even though the policy might say you don't cover legal fees. I understand that if I have a government-wide fee petition hearing in divorce court with my client, that's not a covered claim. But they don't launch professional negligence. They don't demand a jury. They don't file a separate claim. They don't seek monetary damages. I'd like to save a few minutes unless the court has questions. Well, you don't have a – this isn't a fee dispute. It's a well-practiced claim. It is, sir. And it should have been covered. That's my point exactly. Counsel, that additional authority that you'd like to file, I'll give you until Monday to file it. I'll do it right away. Okay. Thank you very much. Would you like me just to file with the site or you want a page of arguments? Whatever is easiest for you. Okay. But whatever you want to file, you can acknowledge by legal court. I'll keep it short. Thank you. Good afternoon, Your Honors. May it please the Court. Counsel, Robert Chalmers for Illinois State Bar Association Mutual Insurance Company, the plaintiff appellant. Your Honors, this is a most unusual appeal. And Mr. Cannulli did not mention jurisdiction, which is quite surprising because he's already asked this court to dismiss his appeal. I have never been in an appeal before, and that's many years, where the appellant is asking a court to dismiss the appeal. He did that in the status report with respect to counterclaims that he filed and urged the court to dismiss his appeal because the counterclaims, as he put it, are pending. I would suggest to this court that the counterclaims, in the light of the judgment entered by the trial court, that there is no duty to defend, which counterclaims are dependent on there being a duty to defend, and there isn't one, are irrefutably moot and are not an impediment to this court's jurisdiction. And if you, and I'm sure the court has read the status report, as well as the response we filed with leave of this court, Mr. Cannulli seems to think that if this court finds, forget the merits, it determines that it doesn't have jurisdiction, that it's a do-over, that he's going to go back to the circuit court where there's a new judge because the trial court that heard this case has since retired, is no longer on the bench. A new judge is going to pick up this 8-year-old case and start over because he said in that status report. So, Mr. Chambers, why don't you move on? Assume that we are thinking that we have jurisdiction, so move on to your next argument. That's fine. And, Your Honor, Justice Cunningham, you asked Mr. Cannulli, is this a fee dispute or a malpractice case? If you look at the substance of it, it's a fee dispute. His former client sued him for the attorney's fees she incurred because of what is alleged to have been useless and unnecessary legal proceedings initiated by Defendant Cannulli. That's a ---- But, Mr. Chambers, isn't the court conduct that the client was complaining of the at the very center of his representation of her? I mean, that ---- she was complaining that he caused all this other stuff because he represented her negligently. Isn't that what the ---- Actually, actually, no. Pardon? Actually, respectfully, no. And that's what distinguishes this from the Kaplan case. What the former client is complaining about is a series of proceedings that were initiated by her lawyer for which she no longer wants to pay. She wants her money back. But basically, she was ---- her premise was that by instituting those proceedings, he represented her in a negligent manner. That's ---- that was clear from what she says. Well, she doesn't allege he lost anything for her. She didn't lose anything other than her money. But essentially, she said that he should not have represented her using that particular methodology, whatever it was. Doesn't that go to the core of his representation? Well, you look at this complaint, the amended complaint, where the client, the former client is seeking the incurred attorney's fees and costs for useless and unnecessary legal proceedings. And then in the breach of contract count is seeking similar relief that he breached his contract by inflating bills and performing actions which were neither necessary nor reasonable. She doesn't allege, either in the malpractice or the breach of contract count, that she had something which he lost, that she had a right which he did not pursue. Counsel, can I ask you about paragraph 21, where she claims he failed to review discovery before initiating such proceedings. Okay. He failed to do something. Now, is that a fee dispute? What she has in the next paragraph, she doesn't want to prove that. I'm asking you about that allegation. It's a measure. This is a malpractice. The count is described as legal malpractice. But we're looking at this, Your Honor. I'm looking at this paragraph right here. Failed to review discovery. It's characterized through G. Counsel, can I ask the question before you respond? Yes. Again, how could there be a fee dispute if he failed to do something? What did he charge for something he failed to do? Well, apparently he was paid, and she wants her money back, for proceedings which were unnecessary. Okay. He failed to analyze or review corporate records. So, again, he failed to do something. How could this be a fee dispute if he couldn't charge for something he failed to do? This seems like malpractice allegation. Does it not? That's what the allegations are, but we're looking at this from the standpoint of is it covered by an insurance policy? Okay. So here we go. Thank you for that. Now, so what you're relying on is paragraph 22, which says that she's been damaged in an amount in excess, whatever, and that she has incurred attorney's fees and costs for useless, blah, blah, blah. So attorney's fees and costs. Correct. Could that word cost be interpreted to be some kind of damages she had, other than costs for attorney's fees? It could be the costs that are a consequence of the fees for unnecessary work. I'm saying it could be costs for something else. It could be. Yes. So that's my comment. It could be something that is a damage to her. You just assume that when they say attorney's fees and costs, it all has to do with the attorney. Well. It could do with some damage she sustained, could it not? It could be, but we have to look at this. We're not here as does this state a cause of action? We're here, is it covered by the insuring agreement of a policy of insurance? Okay, but if we interpret cost as damage she could have, it would be outside the question of whether it's attorney's fees. But if the costs are a consequence of the fees, then they're not covered. I'm saying they could not possibly be a consequence of the fees. Well, I think when the original complaint is compared to the amended complaint, it is clear that because there was no right, this is not a situation where a statute of limitations was blown and a plaintiff can't bring a lawsuit. Here the plaintiff brought her lawsuit through Mr. Kanuhi and is complaining about the things he charged her for. I understand that. Okay. But I'm saying that's not all she's arguing. Well, it appears to be. It appears to be that she's complaining about the fees and costs for useless and unnecessary legal proceedings. What about the things he didn't do? The things he didn't do didn't cause her a loss. Other than money. How do you know that? She doesn't allege a loss. She doesn't allege that she was precluded from doing anything. She's complaining about the manner he conducted her litigation, for which she paid in excess of $100,000 and wants her money back. And under the policy, there's a duty to defend a claim for damages for a wrongful act. A wrongful act is a negligent act, error, or omission in the rendering or failure to render professional services. At this point, aren't we only determining whether or not he should be defended? We're not determining whether or not this amount should be paid. That's what I was about to ask. Yes. This is a simple, and we see them every day of the week, a duty to defend under the policy. That's correct. So she's making allegations that were charged or whatever. And he says, well, that's not true. He wants a defense. Why shouldn't you defend him? We didn't defend him because there is not a covered claim. The damages are excluded. And even if these damages weren't excluded, the lawsuit is over. There is nothing to defend. He represented himself and cannot be paid for his attorney's fees because he didn't incur attorney's fees. Are you saying his time is not worth any money? I mean, if he represented himself, he's not. Are there any insurance coverage cases outside of the settlement context where courts have found the fee exclusion to apply? Tell me, do you have a case that … Well, we've cited some. We've cited them in our brief. That have facts that are similar to this? Well, the closest thing I can think of that's not cited in our brief is a decision from this Court. It's I.S.P.M. Mutual v. McNabola. The fact that Frida alleged, she did allege that he was negligent. Does that distinguish this case from Bertucci where no negligence was alleged? Bertucci is a, no, it doesn't. But it distinguishes this case from Kaplan. Well, I would submit to the Court that it's not, because in Kaplan, the damages were caused by the lawyer.  Now, Kaplan was a situation where Kaplan sued his lawyer and the damages were the, were caused by the lawyer's failure to discharge a debt in bankruptcy.  Mr. Cannulli thinks that Kaplan is right on point. Well, I would submit to the Court that it's not, because in Kaplan, the damages were caused by the lawyer, and those were the loss of the ability to discharge a debt in bankruptcy. It happened to be the attorney's fee. But the attorney did not do something that in the normal course of representing his client competently he would have done. That was like the underlying thing in Kaplan. And that's what Mr. Cannulli, if I understand his argument, is saying happened here. Yes? That's what he says happens. You're going to submit to the Court it's a misunderstanding. That's why you're going there. He says one thing and you say something else. But, okay. The damages sought in this amended complaint, in each of its counts, are not covered by the ISB mutual policy. They do not offer him a defense. Could you respond to Mr. Cannulli's argument about, number one, ISB mutual did represent him for a year and then withdrew its representation. What about representing him under a reservation of rights? You know, there were other ways to go about this, and as Justice Connors inquired, was there any thought given to deposing Ms. Frieda to see what did she really mean? What was she complaining about? Were there any other lesser, more drastic steps that ISB could have taken instead of completely withdrawing their defense of this? Sure. I'll answer each of the questions, Your Honor, and I'll try and hit each of them. ISB mutual provided an unconditional defense for the original lawsuit. It was covered. The amended complaint was filed, and within several weeks, ISB mutual decided that the amended complaint was not covered, denied coverage, filed a complaint for declaratory judgment, and then withdrew from Mr. Cannulli's defense. Could it have done something different? Of course it could, but it didn't. It filed a complaint for declaratory judgment, which it won, and it won because the damages sought are not covered. Could we have deposed Frieda? I suppose we could have. However, that's extrinsic evidence. That can't be used to determine the duty to defend. That's determined by reading the four corners of the complaint in the light of the insuring agreement of the policy. Each has four corners. Extrinsic evidence doesn't typically go to a duty to defend. It goes to establishing ambiguity. He's never complained ever that this policy is ambiguous. That's true. He said that the policy clearly makes ISBA's duty to defend clear. That's his argument. You're absolutely right about that. That's his argument, and what he has said, rather than say the damages are covered, what he has argued is waiver or estoppel apply, and there is no waiver here. He hasn't pointed to any, and estoppel can't create coverage if it doesn't otherwise exist. And we went through this for a number of years in the trial court. After all, this is here on summary judgment, on a question of law, but it has a 1,500-page record. There's a 755-page appendix to the plaintiff's opening brief. This is a question of law, which I think Your Honors are intimately familiar with, and how to resolve these. And I think the resolution that was made of this issue was correct. We would also urge this Court to decide it that way rather than wrestle with these jurisdictional issues, which I think are distractions. And unless the Court wants to hear me say more about what we think about jurisdiction, I'll stick with the duty to defend issues. No, we think you've said enough. Thank you. With respect to the status of the counterclaims, they'll be described as irrefutably moot, denied as moot. Then you look at this case, and you ask about the attorney's review. The Illinois Supreme Court just wrestled with that issue in the McCarthy case last – in 2019, where they held that a litigant who represents himself, who is an attorney, is not entitled to get a fee for his time or service. And they cited a case as early as 1861. We cited a case in our brief, the Cheney case, 1897. It's been the law of Illinois from, well, over 170 years that an attorney representing himself is not entitled to a fee, which means if there's a duty to defend and the insured defended himself, there's no damage. He can't recover his fee. And that's the only damage there could be. It can't be bad faith, Your Honors. Under 155, the fact that the ISBA prevailed in the trial court, if it doesn't prevail in this court, shows a bona fide coverage dispute, which is the antithesis of 155 relief. Counsel, this was decided in the summary judgment. Yes. So there was no question of fact at all. That's correct. And so the interpretation of the complaints does not present a question of fact, or should it even be considered? The interpretation of the underlying complaint in light of the insuring agreement of the policy presented a question of law to the trial court. Not looking at what the relationship was as far as the defense, but what it meant to those that were pleading that case. Are you saying what did the fruit of the amended complaint? The words used in the complaint. I mean, it was the same complaint, just two or three different words than before. Well, two or three significant different words, yes. Right. So is that a question of fact, what those words meant? No. It's a question of law. And we can't ask Jeff Fuck, the author of the amended complaint, what did you mean? Maybe what he meant. Maybe what Mr. Cannuli wouldn't want to hear is we didn't want them to be covered. I don't know what he meant. Well, that would be interesting, would it not? I don't know. And really, it doesn't matter. Well, maybe to say what we meant was we meant to say other damages that she may have had, but I made a mistake. Well, as this record reflects, following the filing of this lawsuit, we moved for the voluntary dismissal of Frida as a nominal but necessary party which motion was granted. And we attached to that motion, to the record, a copy of a letter from Jeff Fuck to me saying we have no interest in the coverage case. C-110 of the record is the motion. Well, yeah. They don't have – Well, that's – It's all there. Was it interested in the coverage case? Well, I don't blame them. Yeah. And we cited in our three the McCarthy v. Taylor. It's 2019, Illinois, 123622. And we cited that for a number of propositions, primarily that an attorney who represents himself or herself is not entitled to a fee for a time of service record. They aren't their own client. For all those reasons, Your Honor, we'd ask this Court to exercise its jurisdiction and, in doing so, to affirm the judgment that was entered below. Thank you. Thank you. Are there any questions? Mr. Panulli, brief rebuttal, please. Mr. Chambers says to this Court that Ms. Frieda was seeking an only legal visa. For that reason, they should not have defended. The only one that can answer that is Ms. Frieda and her attorney. And I think if there is a lack of clarity on the nature and extent of her damages, that means they should have covered the claim because there was a potential there that they could have recovered damages against me. Mr. Chambers said that in the declaratory judgment case, he said of paragraph 14, as the amended complaint seeks only legal fees which do not constitute damages. Respectfully, that's a conclusion. He doesn't know that. The subject of different ways to handle this is the point that you were making. They could have initiated discovery. They could have done all those things before they withdrew. And they didn't. They just withdrew. Somebody at ISBA made a policy decision, and I lost my coverage. The suggestion that my being defended by ISBA's attorneys, that I could have somehow reached out to Ms. Frieda to find out what the nature and extent of her damages are, is, I think, not possible. The other things I would like to say is this. If ISBA is allowed to interpret their policy this broadly, the whole notion of my having coverage is illusory. And it's a windfall for them. It happens all the time when a lawyer is sued for legal malpractice that the injured party has to get another attorney. They have to pay that attorney to try and fix what they say the other lawyer did. I never understood this policy to mean that I wouldn't have bought it because that's why I have insurance. And, you know, I do think there was a conflict of interest because ISBA files a 619 motion, says it's a fee dispute, then withdraws. And so what they should have done, I think, and I don't know this, but they should have said we have a potential conflict of interest. If ISBA makes this argument it's a fee dispute, then that will give us the opportunity to walk away from your coverage. I think what they did here was wrong on so many levels. I think that... Well, we get that. That's why you're here. If I could just very quickly. You know, counsel says that Ms. Frito is trying to recoup her fees. Nothing could be further from the truth. I get a judgment for $75,000 that she didn't pay me. I withdrew it because she wouldn't pay me. And so how is it someone can file a legal malpractice claim seeking only fee damages for fees they never paid? And to your point, she alleged omissions. There are no fees that incur with that. Could you wrap up, please? Yes. This is a de novo review, summary judgment. I think they had the burden to show there were no material issues of fact in the law. And... You filed a motion for summary judgment as well. I did. So, okay. I did. If I could just... And I do think there was forfeiture. I do think if Mutual could have raised the objection when they did, and please appreciate, I cooperated fully. I gave them everything. And I entrusted the defense of my case to Mutual. And I didn't know I had a problem. That's really a bad place for an insurer to be. I didn't know I had a problem with a conflict of interest. So, for all those reasons, I thank you. I appreciate it. I know it's been a long case. It's been a long case because it's important to me. I'm not going to flog a dead horse. But I do think this case has importance to not only me, but to other solo practitioners and small firm lawyers that might not have the ability to withstand eight years of litigation with an insurer. Thank you. Thank you, Mr. Cannulli. Thank you, Mr. Chambers, both of you for sparing an argument. This matter will be taken under advisement. Thank you.